SIMON GORDON v. HIRAM SHIELDS.

EXEMPTION LAWS—*Wagon, Buggy.* A buggy adapted and designed for the carrying of persons only, is not exempt from execution by virtue of the provisions of the sixth clause of section three of the act concerning exemptions, (ch. 38, General Statutes, 1868.)

*Error from Shawnee District Court.*

REPLEVIN for a buggy, harness and buffalo robe, brought by *Gordon* as plaintiff, against *Shields* as defendant. *Shields* had seized the property, as constable, upon an execution issued upon a judgment in favor of the Kansas Valley National Bank and against said *Gordon.* Gordon claimed the property as exempt from seizure and sale on execution. The facts found by the district court were as follows: Until seized and taken in execution as aforesaid *Gordon* was the owner and entitled to the possession of said property, and was not the owner of any other harness or wagon than the buggy and harness in controversy, and was the head of a family and a resident of and in the State of Kansas; that the said buggy is not adapted and designed for carrying commodities, but is a single-seated covered vehicle adapted and designed for carrying persons only, and of the value of $125; that the said harness is a light harness adapted and designed to the use of drawing vehicles of the kind above described, and was used with said buggy, and is of the value of $22.50, that said plaintiff (*Gordon*) is an insurance agent, and said buggy and harness were used by him in carrying on his business as such insurance agent: that the buffalo robe in controversy is of the value of $2.50; that the aggregate value of the property is $150; that said defendant (*Shields*) is a constable of Shawnee

county, and seized and took possession of said property by virtue of the said execution against the plaintiff; and that at the commencement of this action the said property was delivered to said plaintiff, and has not been returned to the defendant. The court also found that the judgment upon which the aforesaid execution issued was not obtained for the wages of any clerk, mechanic, laborer, or servant, nor upon any contract by which the benefit of the exemption laws were waived. Upon these facts the court found as a conclusion of law that the buggy, harness and buffalo robe in controversy are not exempt from seizure and sale upon execution, and gave judgment in favor of the defendant for a return of the property, or, if return thereof could not be had, that he recover. of said plaintiff the said sum of $150, the value of said property so as aforesaid ascertained, and costs of suit. *Gordon* excepted, and now brings the case here for review.

*Martin, Burns & Case*, for plaintiff in error:

1. The property was exempt. Sec. 3, ch. 38, Gen. Stat., p. 473, provides that—"Every person residing in this State, and being the head of a family, shall have exempt," etc., the following among other articles of personal property, to-wit: "*Sixth*, * * one wagon, cart or dray, also harness and tackle for teams, not exceeding in value $300."

From the findings upon which there is no dispute, it will be seen that the plaintiff is shown to be a person entitled under the law to hold exempt from seizure and sale on execution, a horse, or span of horses, a wagon, etc., and tackle for teams, etc., thus leaving two disputed questions to be passed upon and determined, viz: 1st, What kind or character of vehicle, called a wagon, did

the legislature intend should be exempt from seizure and sale on execution? 2d, Is not the vehicle in question, as found by the court exempt?

Webster defines a wagon to be a vehicle "moved on "four wheels, and usually drawn by horses, used for the "transportation of heavy commodities." But in America he says, "light wagons are used for the conveyance "of families, and for conveying light commodities to "market, particularly a very light kind drawn by one "horse."

The court below finds that the article in question, called by the plaintiff a "buggy," "is a single-seated, "covered vehicle, adapted and designed for carrying "*persons*, only." Now, the character and adaptation of the vehicle in question, as found by the court, answers in law to the description and adaptation of a *light wagon*, as defined by Webster. The legislature never intended to make a discrimination between heavy and light wagons; between wagons adapted to the transportation of heavy or light commodities; between wagons drawn by one or more horses; or whether used for carrying *persons* or *families*. If such was the intention, then it would require great skill on the part of every officer who was called upon to make a levy upon any four-wheeled vehicle.

The exemption law is to be construed liberally, for the purpose of giving it full effect: *Carpenter v. Harrington*, 25 Wend., 370; *Griffin v. Southerlain*, 14 Barb., 456; *Gilman v. Williams*, 7 Wis., 329, 337; *Becker v. Becker*, 47 Barb., 497.

2. The court further finds that the vehicle and harness in question were used by the plaintiff in carrying on his business as insurance agent, and were jointly of the value of $147.50. If so used, then they become a necessary part of his "team." The *fifth* and *sixth* paragraphs of

§ 3 of the exemption law allow a resident of the State and head of a family a horse or span of horses, etc., and harness, etc., exempt; and this is equivalent to saying "·a team." Webster defines a "team" to be two or more horses or oxen harnessed together to the same vehicle for drawing, as to a coach, chariot, wagon, cart, sled, sleigh, and the like. In New York the courts hold that a team within the meaning of the exemption act, means horses or oxen harnessed to a vehicle, and *includes the three;* and that though there be but one horse, harness and buggy, or a light wagon, instead of two horses, harness, and wagon, they are exempt from execution if of less value than $300. 1 Duer, 606, 607; 5 How. Prac. R., 288, 293.

*Thomas Ryan,* for defendant in error:

1. The question to be detrmined in this case is whether an ordinary covered buggy, and a light buggy harness, adapted to the use of such buggy, are exempt from seizure and sale on execution. The articles enumerated as exempt, by ch. 38, § 3, sub. 6, Gen. Stat., p. 473, are those commonly and necessarily used by farmers in carrying on the business of farming. The phrase "and other farming utensils," following the enumerated articles, makes it apparant that the legislature exempted these articles in the interest of agriculture. This is evidently true of "harness and tackle for teams." All the articles are suited to the purposes of husbandry. If the legislature intended, by the use of the term wagon, to ·include every kind of vehicle, they would not have added, "cart or dray," and having specified these, and no others, it is evident they did not intend to exempt any others. *Bevitt v. Crandall,* 19 Wis., 582; *Turner v. Billings,* 18 Wis., 163; 2 Minnesota, 89.

There can be no doubt that the articles named were exempted because *adapted* to the ordinary purposes of husbandry. Whether they are employed for that purpose or not is immaterial, since the law does not in express terms make the exemption to depend upon necessity or use.

The term "wagon" is to be understood in the common acceptation of the term, that being the approved usage of the term—a common vehicle for the transportation of goods, wares and merchandise of all descriptions. A buggy, carriage, coach, hack, omnibus, etc., are very different articles, used for conveying passengers, for mere convenience or pleasure—the buggy and carriage being luxuries, rather than necessaries, and certainly in nowise adapted to purposes of husbandry, or any of the industrial pursuits, and do not come within the equity or literal meaning of the act. *Quigly v. Graham*, 5 Cal., 418.

The harness is of the same character as the buggy, suited to the use and enjoyment of the buggy, or some similar vehicle; but not to the use of a wagon, in the common acceptation of the term, *nor the kind of harness or tackle for teams*, suitable to be "included" with "other farming utensils," etc. 19 Wis., 582; 18 Wis., 163.

It is not claimed in the argument that the buffalo robe is exempt.

2. The plaintiff cites several authorities in support of the proposition that the exemption law should receive a liberal construction to give effect to the intention of the makers of it. If the legislature evidently intended to exempt articles adapted to the purposes of husbandry, to enable the head of a family the better to provide for his family, then the construction claimed by plaintiff in error would do violence to that intention.

The *terms* of the law are sufficiently liberal, and any

construction enlarging or extending the liberality of its express provisions is opposed to the best interests of individuals and the State.

The following opinions were filed:

BREWER, J.: Only this one question is presented in the record: Is a buggy included in the term "wagon," as used in the Exemption Law? The court below found that the vehicle in suit known as a buggy was "not adapted and designed for carrying commodities, but is a single-seated, covered vehicle adapted and designed for carrying persons only." We think the term wagon a generic one, including as well vehicles for the carriage of persons, as those for the transportation of commodities, and broad enough properly to embrace such a vehicle as the buggy in controversy. But we are constrained to think, after a careful examination of the statute, as well as the decisions of other courts, that the term "wagon" is here used in a limited sense. The statute reads: "also, "one wagon, cart, or dray; two plows, one drag, and "other farming utensils, including harness and tackle "for teams, not exceeding in value three hundred dol- "lars." This clause obviously was designed for the protection of the *farmer*, to secure to him his implements of husbandry. It is doubtless too narrow a construction, to hold that the use to which the articles named are actually put at the time of seizure determines the question of exemption. Whether used on a farm or not, is immaterial. But that the articles should be adapted to the purposes of husbandry seems to be required. "Other farming utensils," is the language. "*Noscitur a sociis.*" Only those wagons which are adapted to farm purposes are exempt. Now a vehicle which is in the language of

the court below, "adapted and designed for carrying persons only;" cannot in any true sense be called a "farming utensil," is not an implement of husbandry. 19 Wis., 582.

For these reasons the judgment should be affirmed.

KINGMAN, C. J., concurring.

VALENTINE, J.: I concur with the court that the term "wagon" is a generic term, broad enough to include such a buggy as the one in controversy, and broad enough to include every other species of wagon by whatever other name the same may be called. And I also concur that the kind of wagon mentioned in the sixth subdivision of § 3, ch. 38, Gen. Stat., 1868, p. 474, must be a farming utensil. But I differ with the opinion of the court in this: I believe that the implements mentioned in said subdivision *sixth*, in order to be exempt from execution, must be actually used as farming implements; that a wagon, plow, etc., in the hands of a lawyer or hardware merchant, would not be exempt; while a wagon of any kind, even a buggy, if used by a farmer as a farming implement, would be exempt while so used. *Grimes v. Bryne*, 2 Minn., 90, 103, et seq.; *Bevitt v. Crandall*, 19 Wis., 581, 583.

I am also of the opinion that under subdivision *eighth* of the said section any teamster " or other person," even an insurance agent, as this plaintiff was, may hold a wagon exempt from execution if the same be " used and kept for the purpose of carrying on his trade or business," as this buggy was. (*Knapp v. Bartlett*, 23 Wis., 68, explaining *Bevitt v. Crandall*, supra.) Possibly however the court is not required to examine this latter question, as it was not raised by counsel's brief.

*By the Court:* The judgment of the district court is affirmed.